# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-22-00454-CV

**John Barnes Gordon,
Independent Executor of the Estate of Patrick Malcolm Gordon, Deceased, Appellant**

**v.**

**Beverly Diane Gordon, Appellee**

### FROM THE COUNTY COURT AT LAW OF BASTROP COUNTY
### NO. 10,256, THE HONORABLE JOHN M. DELANEY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

John Barnes Gordon, the Independent Executor of the Estate of Patrick Malcolm Gordon, appeals from the trial court's final judgment, rendered after a jury trial, removing him as the executor due to gross misconduct or mismanagement and determining several other issues as matters of law. Among other issues, John challenges the jury's findings supporting his removal; the trial court's legal determinations about the provisions in and effects of the decedent's will; and the trial court's award of attorney's fees to Beverly Diane Gordon, wife of the decedent.[1] We reverse the portion of the trial court's judgment awarding attorney's fees, remand for a redetermination of attorney's fees, and affirm the judgment in all other respects.

---

[1] Because appellant, appellee, and the decedent share the same surname, for convenience we use the parties' first names or the names by which the parties refer to themselves and one another, i.e., "John" for John Barnes, "Pat" for Patrick, and "Diane" for Beverly Diane.

# BACKGROUND

Pat and Diane were married in 1992, and had no children adopted by or born to them during their marriage, or from any other relationships. In February 2009, the couple retained an attorney to draft individual wills and a trust agreement for the Patrick M. Gordon and Beverly Diane Gordon Revocable Trust. The trust agreement appointed Pat and Diane as trustees and John (Pat's brother) as successor trustee should neither Pat nor Diane be able or willing to serve. Thereafter the couple funded the trust by changing the title on their vehicles, real property, equipment and tools used in Pat's welding business, and some financial accounts. The trust continued to hold title to such property until Pat's death.

In August 2011, the couple executed a joint will, which was drafted by John. John had previously provided some investment advice to the couple and, though not an attorney, had urged them to allow him to draft their wills and provide them "estate planning" to avoid an "estate war." The will appoints John as independent executor and names Pat's niece and three nephews (including John's two sons) and Diane's nieces and nephews as primary beneficiaries, depending upon which spouse dies first. The will identifies several categories of property (A through F) and provides that, "[a]fter all just debts and all of the costs of executing this will have been paid, the rest, residue, and remainder of the estate in CATEGORIES A, B, C, D, E, & F shall be distributed as follows . . . ." The will specifies three different distribution schemes for the categories of property: (1) if Pat dies first, (2) if Diane dies first, and (3) if Pat and Diane die within thirty days of each other. The will does not have a residuary clause providing for the distribution of property not falling within any of the six categories.

Pat died in August 2012, and John admitted the will to probate and was issued letters testamentary as the independent executor. Shortly thereafter, a dispute arose between John and Diane about whether certain property was to be included in Pat's probate estate. John filed a petition for declaratory judgment requesting the court to construe the following paragraph in the will:

> It is our intention to dispose of all property (real, personal and mixed) which we have the right to dispose of by Will per the below categories in the manner described below based on who dies first or if we both die within 30 days of each other. **This Will shall override any prior allocations described in trust documents or any financial documents such as annuities and certificates of deposit**.

(Emphasis added.) John contended that the final sentence of the paragraph revoked the couple's trust, despite the fact that neither Pat nor Diane had taken any steps to transfer property out of the trust and into their own names.[2] Diane filed a motion for summary judgment in which she contended that the trust became irrevocable upon Pat's death; that the above clause was testamentary, becoming effective only upon Pat's death, and therefore the clause had not revoked the trust; and that the disputed property was therefore not part of Pat's estate. The trial court granted Diane's motion, and our sister court (on transfer from this Court) affirmed that determination. *See Gordon v. Gordon*, No. 11-14-00086-CV, 2016 WL 1274076, at *4 (Tex. App.—Eastland Mar. 31, 2016, pet. denied) (mem. op.) (holding that above clause in will was testamentary, rather than operative *in praesenti*, and did not revoke trust).

The probate litigation, however, did not conclude there and has been pending for over a decade. While John's original petition and Diane's motion for summary judgment were

---

[2] The trust provided that either Pat or Diane (or both) could revoke the trust during their lifetime but only by signed revocation delivered to the other trustee. Upon the death of either spouse, the trust would become irrevocable as to the deceased settlor.

3

pending before the trial court, Diane filed an original petition for disqualification and removal of John as independent executor. Diane prayed that the court remove John due to unsuitability, *see* Tex. Est. Code § 304.003(a)(5) (noting that person found "unsuitable" by court is disqualified to serve as executor), and because he had engaged in gross misconduct or gross mismanagement of Pat's estate, *see id.* § 404.0035(b)(2) (permitting court to remove independent executor who is "proved to have been guilty of gross misconduct or gross mismanagement in the performance of the independent executor's duties"). The parties have filed many other pleadings and motions over the years, including John's latest (fourth amended) petition for declaratory judgment, in which he requests the court to determine that (a) either the will is a contract between Pat and Diane or, alternatively, is an "election will"; (b) Diane breached her fiduciary duty to Pat and committed fraud on the community; (c) the will revoked beneficiary, right-of-survivorship (ROS), and payable-on-death (POD) designations applying to the couple's financial accounts; and (d) Diane was unjustly enriched by first agreeing to receive $150,000 of Pat's separate property in exchange for executing the joint will but now attempting to receive more than she is entitled under the will. In Diane's most recent (first amended) petition for declaratory judgment, she requests the court to determine that the will conveys only Pat's one-half community interest in the assets comprising Categories B and C (the welding-business equipment and the financial accounts, respectively) and prays for attorney's fees.

The case was tried to a jury in February 2022 on only two issues: (1) Diane's claim that John should be removed for gross mismanagement or misconduct and (2) John's claim that Diane was unjustly enriched. The trial court rendered judgment on the jury's verdict that John take nothing on his unjust-enrichment claim and that he be removed as independent executor. The parties agreed to submit the issue of attorney's fees to the court, and after a

4

subsequent evidentiary hearing, the court rendered judgment that Diane recover from John specified amounts of attorney's fees, both at the trial level and in the event of an appeal. The court additionally made the following rulings on "other matters of law at issue" in the case, some of which it had previously determined in interlocutory summary-judgment orders:

- The Will is not enforceable as a contract.
- Provisions in the Will that purport to alter beneficiary designations or joint-tenant-with-right-of-survivorship designations in deposit accounts or other contracts are legally ineffective to alter them.
- The Will conveys only Pat's one-half community interest in property and does not convey any separate property of his.
- [Diane] has not made a "Widow's Election."
- Because the Will does not have a residuary clause, any recovery by John on his cause of action for unjust enrichment would pass by intestate succession to [Diane], Pat's sole heir at law.

John timely perfected this appeal from the judgment.

## DISCUSSION

### *Issues pertaining to the jury's findings*

In his first and second issues, John contends that the evidence is legally and factually insufficient, respectively, to support the jury's finding that his actions constituted gross misconduct or gross mismanagement. Unlike his issue challenging the legal sufficiency, however, he did not preserve his challenge to the factual sufficiency on this finding because, although he filed a motion for new trial, he did not pay the filing fee for the motion. *See Garza v. Garcia*, 137 S.W.3d 36, 38 (Tex. 2004) (holding that because party did not pay filing fee for motion for new trial, complaint therein concerning factual sufficiency was not preserved for appellate review). We accordingly overrule his second issue.

5

As to John's contention that the evidence is legally insufficient to support the jury's finding that his actions constituted gross misconduct or mismanagement, to prevail on appeal he must demonstrate that no evidence supports the adverse finding. *See Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 215 (Tex. 2011). Evidence is legally sufficient to support a jury finding if it "would enable reasonable and fair-minded people to reach the verdict under review." *Id.* In reviewing the evidence, we "credit favorable evidence if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not." *Id.*

The jury was charged with answering the following question: "Did John Gordon engage in gross misconduct, or gross mismanagement in the performance of his duties as independent executor?" Gross misconduct was defined in the charge as "glaringly obvious or flagrant misconduct" and gross mismanagement as "glaringly obvious or flagrant mismanagement."

As independent executor, John had a fiduciary duty to protect Diane's and the other estate beneficiaries' interests by fair dealing in good faith with fidelity and integrity. *See In re Roy*, 249 S.W.3d 592, 596 (Tex. App.—Waco 2008, pet. denied); *Geeslin v. McElhenney*, 788 S.W.2d 683, 685 (Tex. App.—Austin 1990, no writ). An executor's personal interests may not conflict with his fiduciary obligations to the estate and its beneficiaries. *See Roy*, 249 S.W.3d at 596. When legally sufficient evidence establishes that an executor violated his fiduciary duties, such as by failing to make disclosures in required accountings or to beneficiaries about estate receipts and expenses, the trial court's finding that the executor exercised gross mismanagement may properly be upheld on appeal. *See id.* at 597. Gross mismanagement and gross misconduct include, at a minimum, (1) any willful omission to perform a legal duty; (2) any intentional commission of a wrongful act; and (3) any breach of a

6

fiduciary duty that results in actual harm to a beneficiary's interests. *Sammons v. Elder*, 940 S.W.2d 276, 283 (Tex. App.—Waco 1997, writ denied). Our review of the record leads us to conclude that the evidence is legally sufficient to support the jury's finding.

John testified that he distributed $594,000 from an estate account to his two sons, niece, and nephew within a month of being appointed executor. This transfer was in direct conflict with the debt clause in the will, which was admitted into evidence, and which expressly requires that "all expenses associated with the administration of [my] estate be paid prior to the distribution of any of the estate." Moreover, this transfer constituted the majority of Pat's property passing under the will.[3] Besides leaving few assets in the estate with which to pay administration expenses, the amounts of which were unknown at such an early stage, John's disbursement of the $594,000 also deprived Diane of her one-half community share of that amount.[4]

When cross-examined on the issue of whether such distribution was in violation of the will's debt clause, John explained that the will contained a "typo" because the account from which he made the distribution was not to be considered a part of the estate but, instead, constituted "inheritances" to which the debt clause did not apply. He stated that the account

---

[3] Although the trial court did not determine as a matter of law the specific property or values thereof passing under the will, it is fair to estimate that this $594,000 disbursement constituted the majority of Pat's estate, based on (1) the court's determinations that the will did not revoke the trust or beneficiary designations on financial accounts, (2) the evidence establishing that most of the parties' property other than the accounts remained titled in the trust, (3) John's list of financial accounts listing the beneficiary or POD designations of the couple's accounts, and (4) John's filed inventory listing his estimated values of the "estate" property. John's inventory estimated the value of Pat's tangible personal property, such as artwork, furniture, and jewelry, as $37,500.

[4] The trial court determined that the will conveys no separate property of Pat, and John does not challenge that determination on appeal.

7

should pass outside of the will. But, according to the list of investment accounts John himself prepared and attached to a letter brief he filed with the court, and which was admitted into evidence, the account that contained the $594,000 did not contain any beneficiary designations or have a ROS or POD provision (unlike most of Pat's and Diane's banking and investment accounts).[5]   Furthermore, through his unjust-enrichment claim, John testified that he was seeking to recover his executor expenses of $300,000 from Diane only and would not seek reimbursement of his expenses from his sons, niece, and nephew, to whom he had distributed the $594,000, meaning that Diane would have to foot the bill on those administration expenses and would be receiving less of the estate than that to which she was entitled.

John testified that he sold some of the welding-business equipment—an action that violated the court's injunction, a copy of which was admitted into evidence—claiming that at a hearing the court gave him oral permission to sell the equipment. Regardless of whether the sale was authorized, however, half of the proceeds constituted Diane's community property, and the equipment was titled in the trust, but John did not distribute to Diane her share of the community proceeds and instead used it, he claimed, to "recoup" his fees. He also testified that he included Diane's community-property interest in the estate's real-property valuations when compiling the estate inventory, despite exhibiting an understanding that community property means that each spouse has an undivided one-half interest in the property. He claimed that his attorney advised him to compute the estate values thusly.

On cross-examination, John testified that Pat believed the will's provision stating that it "override[s] allocations described in trust documents or other financial documents" was

---

[5] The account was held solely in Pat's name, and therefore John gained control over the account when he was issued letters testamentary.

"effective at the time he executed the will." However, when probed about a lease contract (which John had also drafted) between the welding company and the couple's trust requiring the company to make regular lease payments to the trust for the rental of the equipment and tools (owned by the trust), John confirmed that the welding company continued making regular lease payments to the trust even after the will was executed. When questioned why Pat would have continued making those payments if he believed that the will had revoked the trust, John was unable to provide an explanation but rather merely confirmed that the lease payments continued to be made by the welding company to the trust account. John confirmed that Pat was aware of the monthly lease payments to the trust account, even though Diane wrote most of the checks and Pat wrote only three of them.

John testified that, apart from executing the will, Pat did not take any actions to revoke the trust. He also testified that Pat did not "do anything" to change any beneficiary, ROS, or POD designations on financial accounts after the will was signed, and John did not do anything to "help facilitate" changing any designations. Nonetheless, even though John "tried to interpret [the will] the way [he] felt [the couple] wanted it interpreted," he admitted that the court had told him his interpretation of the will was "wrong" with respect to "some" (unspecified) issues. He testified that he pursued his "interpretation" of the will not to benefit his sons, niece, and nephews but to "do exactly what the will said as [he] understood what Pat and Diane meant."

When challenged on cross-examination about the unjust-enrichment claim he was pursuing, John evaded the question about to whom any proceeds from a recovery would be distributed, despite being informed by opposing counsel that the will has no residuary clause and that any recovery would, therefore, go to Diane as the sole heir under intestacy laws. Despite a temporary injunction requiring John to keep "safeguarding" funds in the estate of no less than

9

$20,000, he informed the judge that the estate had no funds available, *after* he had made the large distribution to his sons, niece, and nephews. One of Pat's nephews testified that he was satisfied with the share of the estate he received, and no other beneficiary had filed anything in the case complaining about unjust enrichment or the distribution of the estate. Diane testified that she signed the will John drafted "under duress" because she had been diagnosed with Stage 4 cancer and Pat—who had suffered at least two recent strokes—had threatened her with divorce if she did not sign it. She explained that John had helped her and Pat title all the business equipment in the trust, which continued to hold title to the equipment after the will was signed and through Pat's death.

Having reviewed the record, including the above-cited evidence, we conclude that legally sufficient evidence supports the jury's finding that John engaged in gross misconduct or gross mismanagement as independent executor of the estate. The evidence supports findings that he placed the interests of his sons, niece, and nephew ahead of Diane's interests; that he willfully distributed assets of the estate knowing that such distribution was contrary to the will's provisions and would disproportionately benefit his sons, niece, and nephews to Diane's detriment; that his inventory was inaccurate and misleading; that pursuing his unjust-enrichment claim was a waste of estate resources; that he violated a court injunction and reserve requirements; and that he failed to distribute portions of the estate rightfully belonging to Diane. We accordingly overrule John's second issue.

In his third issue, John contends that the evidence is factually insufficient to support the jury's finding that Diane was not unjustly enriched.[6] However, as we determined with respect to John's second issue, John did not pay the filing fee for his motion for new trial and thus did not preserve this issue. *See Garza*, 137 S.W.3d at 38.

***Issues pertaining to the trial court's legal determinations and failure to make additional findings***

In his fourth issue, John contends that the trial court erred in failing to provide "adequate findings of fact and conclusions of law," preventing him from addressing on appeal "those portions of the judgment not the subject of the jury trial" (i.e., all issues except unjust enrichment and gross misconduct or mismanagement). The trial court made findings of fact and conclusions of law after John requested them. John then requested additional findings of fact and conclusions of law, *see* Tex. R. Civ. P. 298, arguing that each of the trial court's legal determinations needed to be supported by "specific facts" and that the court's finding that Diane is entitled to all of her requested legal fees must be supported by "facts which demonstrate that the claimed attorney's fees are related to matters for which the laws allowed such recovery and [must] specify the facts that would justify not segregating those fees." The trial court did not make additional findings of fact and conclusions of law, and John contends that such failure unfairly prejudices him and inhibits his ability to prosecute this appeal.

A party is not entitled to findings of fact and conclusions of law when the trial court renders judgment or decides an issue as a matter of law, because findings and conclusions serve no purpose in such instances and should not be requested, made, or considered on appeal.

---

[6] The jury charge defined "unjust enrichment" as occurring "when someone has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain."

11

*IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 443 (Tex. 1997) (findings have no purpose and should not be requested for, e.g., summary judgments, judgment after directed verdict, judgment non obstante veredicto, and any judgment rendered without evidentiary hearing); *Watson v. City of San Marcos*, No. 03-22-00307-CV, 2023 WL 3010938, at *2 (Tex. App.—Austin Apr. 20, 2023, pet. denied) (mem. op.) (recognizing that trial court need not make findings of fact and conclusions of law when it decides legal issues without hearing evidence). As explained below, each of the legal determinations that John challenges involves the proper construction of the will or of statutes or the application of statutes or the common law to the undisputed facts; none of them involve the resolution of disputed fact issues. Accordingly, John was not entitled to findings of fact and conclusions of law as to the challenged legal determinations. *See IKB Indus.*, 938 S.W.2d at 443.

As to his complaint that the trial court did not "specify in detail the facts that would justify not segregating" Diane's recoverable from non-recoverable attorney's fees, we address that contention below with respect to John's tenth issue. Additionally, because we review complaints about the amount of fees awarded for legal sufficiency, we conclude that John has not demonstrated that he has been prejudiced or prevented from presenting his case on appeal by the trial court's failure to issue additional fact findings regarding attorney's fees because in our review we necessarily consider the sufficiency of the entire evidentiary record to support the trial court's implied finding that all of Diane's requested fees were recoverable. *See Aaron Rents, Inc. v. Travis Cent. Appraisal Dist.*, 212 S.W.3d 665, 671 (Tex. App.—Austin 2006, no pet.) (noting that appellate courts review amount of attorney's fees awarded for legal sufficiency); *see also Fawcett v. Grosu*, 498 S.W.3d 650, 666 (Tex. App.—Houston [14th Dist.]

2016, pet. denied) (noting that party seeking attorney's fees must prove amount as well as reasonableness and necessity of fees sought). We overrule John's fourth issue.

In his fifth issue, John contends that the trial court erred in determining as a matter of law that the will is not a contract. Section 254.004 of the Estates Code governs whether a joint will is to be construed as a contract:

> (a) A contract executed or entered into on or after September 1, 1979, to make a will or devise, or not to revoke a will or devise, may be established only by:
>
> > (1) a written agreement that is binding and enforceable; or
> >
> > (2) a will stating:
> >
> > > (A) that a contract exists; and
> > >
> > > (B) the material provisions of the contract.
>
> (b) The execution of a joint will or reciprocal wills does not constitute by itself sufficient evidence of the existence of a contract.

Tex. Est. Code § 254.004. No provisions within the will state, either expressly or impliedly, that the couple have an existing contract regarding the devise of their property, and John points to no stand-alone or other written agreement constituting a contract to devise their property. Instead, he relies on the following provision of the will to support his contention that it constitutes a contract:

> The purpose of this joint Last Will and Testament is to allocate the combined assets of PATRICK and DIANE GORDON depending on who dies first or if both die within 30 days of each other AND to identify assets which are not to be considered jointly a part of the estate.

That provision, however, neither evidences that the parties have an existing contract for the devise of property nor does it identify the material provisions of any such contract. John also

13

relies on the fact that the will contains two distinct descriptions of distribution of the estate assets, depending on which spouse dies first, as specifying the "material provisions" of the parties' purported contract. But the will's mere recitation of two different distribution schemes, without more, also does not evidence that a contract exists or meet the statutory requirements. Although the statute does not define "material provisions" in this context, courts have examined wills for a number of different factors to determine whether they include material provisions, including (1) a statement about the consideration for making the agreement, (2) a statement that the agreement cannot be changed or varied without the consent in writing of each person making the will, (3) a reference to the statute, and (4) a specific description of what the contract requires in the event of the death of the first person making the contractual wills. *Ray v. McMaster*, 296 S.W.3d 344, 347–48 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Here, although the will does contain specific descriptions of what devises are to be made upon the death of the first spouse, it does not contain any statements about consideration for the purported agreement, the irrevocability of the will absent both parties' written consent, or a reference to the statute. None of the plain language of the will states or implies that the parties have a contract, and the will does not itself constitute a contract.

John lastly points to his own trial testimony in which he stated that Diane had been "negotiating" with Pat about the provisions of the joint will. He testified that after Diane had expressed that she "wanted the homestead" to remain in her family, Pat wanted something in return, which prompted the provision in the will devising the welding company's equipment to his nieces and nephews. Additionally, John testified that Diane still "wanted more money," which prompted Pat's setting up an account for her and depositing $138,000 into it, which had increased to around $161,000 upon Pat's death. In contrast, Diane testified that Pat deposited

14

$138,000 into an account in solely her name in exchange for her signing a "release" required by the financial institution into which Pat then deposited a much larger sum of funds, which constituted the funds that John later distributed to his sons, niece, and nephew. Although the parties may have had an agreement about the way account ownership was set up for these two accounts, that agreement does not equate to an agreement to execute the joint will. Despite Diane's testimony that Pat threatened her with divorce if she did not sign the will, such alleged "duress" does not transform the joint will into a contract. Moreover, even if Pat and Diane had been "negotiating" about their desires for how their property would pass upon their respective deaths, no evidence shows that any consideration was exchanged *for Diane's execution of the will* or that the will was nonrevocable or could not be amended absent both parties' consent.

We construe written instruments such as wills and contracts by considering what is contained within their "four corners" and the objective meaning of the language actually used, *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) (contracts); *Merrick v. Helter*, 500 S.W.3d 671, 674 (Tex. App.—Austin 2016, pet. denied) (wills), and extrinsic evidence of the parties' intent is not admissible to create an ambiguity, *Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 305 (Tex. 2015). John has not argued that the will is ambiguous, and we hold that it is not ambiguous with respect to whether it is a contract. As it is not ambiguous and because the will does not meet the requirements of Section 254.004, the trial court did not err in determining that it is not a contract. We overrule John's fifth issue.

In his sixth issue, John contends that the trial court erred in determining that the will did not alter the provisions of financial accounts having beneficiary designations or ROS or POD provisions. He relies on the following paragraph in the will:

15

> It is our intention to dispose of all property (real, personal and mixed) which we have the right to dispose of by Will per the below categories in the manner described below based on who dies first or if we both die within 30 days of each other. This Will shall override any prior allocations described in trust documents or any financial documents such as annuities and certificates of deposit.

John argues that the couple's assets at the time of Pat's death included fourteen financial accounts, that this paragraph revoked any POD or ROS provisions when the will was executed, and that the trial court could not have made the challenged legal determination absent evidence as to each individual account. We disagree.

The Estates Code specifies that accounts having the following provisions or attributes are non-testamentary transfers that are not subject to the testamentary provisions of the code: ROS, POD, and convenience and trust accounts. *See* Tex. Est. Code §§ 113.151–153, .155, .158. The only way to change the beneficiary designations or type of account ownership is through written notice to the financial institution. *See id.* § 113.157. Transfers of property that occur pursuant to the designations of such accounts are considered non-testamentary, and the Estates Code expressly "does not invalidate" them. *Id.* § 111.052.

The trial court's legal determination that the will did not alter provisions of financial accounts that had beneficiary designations (i.e., POD or ROS provisions) is, essentially, nothing more than a correct summary of the applicable law as explained just above. No evidence about the individual accounts belonging to the couple, Pat, or Diane was necessary to support this pure legal determination that merely restates the law. Furthermore, in the prior appeal involving this estate, our sister court determined that the will was testamentary in nature and intended to take effect only upon the testator's death; it did not express a present intent for immediate effect to include revocation of the couple's trust. *See Gordon*, 2016 WL 1274076,

16

at *3-4. By the same reasoning, the will—being testamentary in nature rather than operating *in praesenti*—does not operate to revoke any account designations or express any present intent to do so. We overrule John's sixth issue.

In his seventh issue, John contends that the trial court erred in determining that, to the extent the will is legally effective to convey any property, it conveys only Pat's one-half interest in the community property. This determination is consistent with the general rule that a testator may dispose of only his share of community property, not the share of his spouse. *See Langehennig v. Hohmann*, 163 S.W.2d 402, 460 (Tex. 1942) (holding that testator "could not make testamentary disposition of the half of the community property that belonged to his wife, and an intention to dispose of what he did not own is not to be imputed to him"); *Marshall v. Land*, 413 S.W.2d 820, 823 (Tex. App.—Dallas 1967, writ ref'd n.r.e.) ("It has long been the settled law of this state that neither spouse had the right to make a testamentary disposition of the other's interest in their community property."); *see also Wright v. Jones*, 674 S.W.3d 704, 712 (Tex. App.—Waco 2023, no pet.) (noting Texas presumption that property owned by married persons is presumed to be community property and that each spouse has undivided one-half interest in such). Although, as John contends in his related eighth issue, a so-called "widow's election" exception to this general rule applies when a testator's will unequivocally disposes of his spouse's property, we agree with the trial court's (a) implied determination that the exception does not apply here and (b) express determination that Diane did not make a widow's election, for the simple reason that there was no election for her to make.[7] *See Estate of Cole*, No. 02-13-

---

[7] The determination that the exception does not apply here is implicit in the trial court's determination that the will conveys only Pat's one-half interest in the community property because if the will expressed the unequivocal intent of Pat to convey Diane's community interest, it would necessarily convey more than Pat's one-half interest.

17

00417-CV, 2015 WL 392230, at *4-5 (Tex. App.—Fort Worth Jan. 29, 2015, no pet.) (mem. op.) ("A surviving spouse is put to an election to choose between a benefit given her under a will to which she would not otherwise be entitled or to take her half of the community property independently of the will."). The exception applies only when the testator *unequivocally* devises property that is not his own (e.g., his spouse's share of community property) while also providing in the will benefits for the dispossessed spouse that she would not otherwise enjoy. *See id.* "An election is present if the testator clearly and unequivocally stated in the will that his intent was to dispose of the beneficiary's property such that the will's only possible construction is that the testator intended that the bequests and devises must be accepted in lieu of the homestead and exempt personal property rights." *Id.* at *4; *see also Long v. Long*, 252 S.W.2d 235, 242 (Tex. App.—Texarkana 1952, writ ref'd n.r.e.) ("The doctrine of election by the wife applies where the will of the husband disposes of property belonging to both spouses and at the same time makes provision for the wife to compensate her for the loss of her rights or of ownership.").

We presume that the testator intended to dispose of only his own property. *Cole*, 2015 WL 392230, at *4. If there is ambiguity in the provisions of the will regarding the testator's intention or if the will's provisions leave the court unable to say either that it conclusively appears that the intention of the testator was to dispose of the entire community estate or that the language used is fairly susceptible of no other construction, then the presumption is not overcome, and we will hold that the will disposes of the testator's property and interests only. *See Long*, 252 S.W.2d at 242 ("[I]f the language used is susceptible of two constructions, then we must adopt the one which is in keeping with the general rule of presumption that a testator did not inten[d] to dispose of any property not his own."). A plain

18

reading of the will in its entirety does not conclusively establish an intention by Pat to dispose of the entire community estate. The provisions of the will pertinent to this issue are the following:

The purpose of this joint Last Will and Testament is to allocate the combined assets of PATRICK and DIANE GORDON depending on who dies first or if both die within 30 days of each other AND to identify assets which are not to be considered jointly a part of the estate.

It is *our intention to dispose of all property* (real, personal and mixed) *which we have the right to dispose of by Will* per the below categories in the manner described below based on who dies first or if we both die within 30 days of each other. This Will shall override any prior allocations described in trust documents or any financial documents such as annuities and certificates of deposit.

Category A [first identifying the couple's two parcels of real property and then continuing,] The intent of this joint will is for the [real property] to be directed toward DIANE GORDON's direct heirs. The intent of this will is to allow Helen Bunte [Diane's mother] to continue living in the residence on [certain identified real property] free of charge for the remainder of her life.

Category B This category shall consist of all of the . . . [earlier defined] "steel business equipment." The intent of this joint will is for the "steel business equipment" to be retained by PATRICK GORDON until he no longer desires to own such equipment.

Category C This category shall consist of all, non-excluded, financial [accounts] that are individually or jointly owned in trust or separate . . . .

Category D This category shall consist of . . . [an identified brokerage account or any other] that is set up to hold only estate inheritances and gifts of inheritance that PATRICK GORDON has or will received [sic] from his father . . . or uncle . . . . The intent of this joint will is for [this category] to be passed on 100% to PATRICK GORDON's three nephews and niece after his death—25% to each.

Category E This category shall consist of . . . [an identified brokerage account or any other] that is set up to hold only estate inheritances and gifts of inheritance that DIANE GORDON has or will received [sic] from her family or is allocated from inheritance from PAT GORDON's father . . . or uncle. . . . The intent of this will is for [this category] to be passed 100% on as part of DIANE GORDON's estate to her designated beneficiaries . . . .

Category F This category shall consist of all . . . tangible articles of a personal nature.

19

If PAT GORDON dies first:

CATEGORY A—. . . shall be retained by DIANE GORDON with clear and free title.

CATEGORY B—. . . shall be liquidated and the proceeds allocated to PAT GORDON's designated beneficiaries.

(Emphases added.) The combination of the earlier statement in the will that Pat and Diane intend to dispose of the property "which we have the right to dispose of by Will" with the later statement that, in the event Pat predeceases, the Category B property shall be allocated to his "designated beneficiaries" (which are later identified as his three nephews and one niece) at most create an ambiguity about whether Pat intended to dispose of Diane's share of community property (i.e., her half interest in the Category B property). None of the other provisions evidence any purported intent by Pat to dispose of Diane's share of community property. Because the purported conveyance of Diane's community-property share is equivocal, at best, we conclude that the presumption stands: Pat is deemed to have intended to convey only the property he had a legal right to convey, that is, his share of the community interest in the Category B property.[8] *See id.* Accordingly, the "widow's election" exception does not apply, Diane was not put to an election, and Diane did not make an election because there was no election for her to make as a matter of law. We overrule John's seventh and eighth issues.

In his ninth issue, John contends that the trial court erred in determining that, "[b]ecause the Will does not have a residuary clause, any recovery by [the estate] on the cause of action for unjust enrichment would pass by intestate succession" to Diane, Pat's "sole heir at

---

[8] Furthermore, the evidence established that the welding-business equipment (Category B) was owned by the trust both when the will was executed and at the time of Pat's death, and that Pat was aware of such ownership. Thus, even if parol evidence were admissible to discern Pat's intent, such evidence would support the trial court's conclusion that the will does not demonstrate an intention by Pat to dispose of the entire community estate.

law." He contends that this statement in the judgment is "irrelevant to the issues necessary for entry of a final judgment" and "is not supported by any pleading." By this issue, John is merely restating his argument made in his third issue challenging the jury's finding that Diane was not unjustly enriched, which issue he did not preserve. However, even if this statement by the trial court is superfluous and unsupported by any pleading, John has not identified how he has been harmed by it, as it is a true statement under applicable law. *See* Tex. Est. Code §§ 201.002 (providing for intestate succession of separate estate of intestate decedent with surviving spouse), .003 (providing for intestate succession of community estate of intestate decedent with surviving spouse); *Estate of York*, 934 S.W.2d 848, 850 (Tex. App.—Corpus Christi-Edinburg 1996, writ denied) (observing that where will contains no residuary clause, estate property not otherwise bequeathed thereunder passes to decedent's heirs by intestacy). We overrule John's ninth issue.

### *The issue of attorney's fees*

In his tenth and final issue, John contends that the trial court erred in awarding Diane attorney's fees of $111,249.50, which is the full amount she requested and that is detailed in the billing statements the court admitted into evidence. John takes issue with the award on three grounds, which we have reordered: (1) the trial court erred in making him personally liable for the attorney's fees, (2) Diane did not segregate fees pertaining to obtaining removal of him as executor from fees incurred on other issues for which she is not entitled to recovery of fees, and (3) there is no evidence that the award of conditional appellate attorney's fees is reasonable and necessary.

As to John's first argument, the Estates Code expressly provides for a personal representative's liability, and for his sureties' liability, for costs of removal and reasonable

21

attorney's fees incurred in removing the representative if the representative "neglects to perform a required duty or is removed for cause." Tex. Est. Code § 351.003. We have affirmed the trial court's judgment removing John for cause, which removal triggered Section 351.003's application, and the availability of attorney's fees under a particular statute is a question of law for the court, *see Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999). We conclude that, on the basis of the plain text in Section 351.003, Diane is entitled to an award of attorney's fees against John in his individual capacity.[9] *See In re Estate of Vrana*, 335 S.W.3d 322, 327 (Tex. App.—San Antonio 2010, pet. denied) (construing former version of this statute to permit courts to assess reasonable attorney's fees against personal representative in individual capacity).

As for John's second argument, it is true that when a statute authorizes attorney's fees, a fee claimant has the burden to segregate fees between claims for which they are recoverable and claims for which they are not. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006). An exception to the duty to segregate exists "when discrete legal services advance both a recoverable and unrecoverable claim that are so intertwined that they need not be segregated." *Id.* at 313–14. The party seeking to recover its fees bears the burden to show that segregation is not required. *Clearview Props., L.P. v. Property Tex. SC One Corp.*, 287 S.W.3d 132, 144 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). Whether and the extent to which attorney's fees can be segregated is a mixed question of law and fact, and if

---

[9] John also argues that Diane failed to plead for attorney's fees because the body of her original petition for removal does not contain a section specifically requesting that attorney's fees be imposed against him individually, arguing that her request for attorney's fees appears only in the prayer of her petition in general form (seeking an award of "reasonable attorney's fees and costs of court"). But such request is permissible. *See Tull v. Tull*, 159 S.W.3d 758, 762 (Tex. App.—Dallas 2005, no pet.) ("A general request for attorney's fees in the prayer of the pleading is itself sufficient to authorize the award of attorney's fees."). Moreover, Diane's original petition for removal named John in his individual capacity and cited the predecessor of Texas Estates Code Section 404.0035(b), which authorizes removal for cause.

segregation is possible, remand is required.  *Chapa*, 212 S.W.3d at 313; *Osborne v. Jauregui, Inc.*, 252 S.W.3d 70, 76 (Tex. App.—Austin 2008, pet. denied).

Diane argues that removal of John as executor has been "the primary objective" of her counsel, Robert Avera, and has been the "only thing that will finally bring this litigation to an end."  She argues that every interlocutory victory she has received and every hour spent by her attorneys in this case resulted in "further evidence" of John's gross mismanagement and misconduct and that either there is no duty to segregate because "all fees [she] incurred helped prove the case for removal" or the fees "not directly related to that task were so inextricably intertwined that they need not be segregated."  She cites Avera's affidavit and hearing testimony supporting her request for attorney's fees.

In his affidavit, Avera states that John's "gross misconduct included each and every motion and pleading which was filed by him in which Diane Gordon as defendant was forced to defend through litigation.  Every motion that was decided in Diane Gordon's favor provided for an award of attorney fees."  He further avers that all fees incurred by Diane "were inextricably intertwined with removal of John," and that the "jury heard evidence of such motions and these results were used as a basis of the allegation that John Gordon engaged in gross misconduct."  At the hearing on attorney's fees, Avera testified similarly, again representing that he "presented to the jury" evidence of "every ruling that we acquired from the Court previously to show that [John] was engaged in gross misconduct by continuing to take legal positions that were not sustainable," that caused the case to span over ten years, and which John lost.  However, at the jury trial, neither party presented evidence of any of the numerous motions and pleadings filed by John or of the trial court's rulings thereon; at best, Avera alluded to some of the issues on which John "lost" when he cross-examined him, and John admitted that

23

he "lost" some of them, but there were no specifics, and none of the pleadings, motions, or rulings were offered into evidence.

On cross-examination at the hearing on attorney's fees, Avera admitted that at least two of John's motions to compel delivery of estate property—which motions Avera defended Diane against—were granted by the court. Avera also admitted that he had incurred some fees in the beginning of the case pertaining to his filing of a plea in abatement and a plea to the jurisdiction *before* he filed the petition to remove John as executor. When John's counsel asked him to confirm that those pleas were denied, Avera stated that he could not remember; however, those fees were included in the exhibit he filed and in the total amount of fees that the court awarded. Avera filed his petition to remove John in 2013, but the issue did not go to trial until 2022. When questioned about why he did not more diligently pursue the removal petition during that near decade, Avera explained that the trial court "didn't want to rule on any other issues until the appeal of our original first motion for summary judgment was ruled on by the Supreme Court as to whether or not the will revoked the trust."[10] When queried about why he defended against a petition for writ of mandamus that John's counsel filed to challenge the trial court's refusal to rule on other issues pending appeal of the trust-revocation issue and how that proceeding pertained to removing John, Avera replied that John "has not been agreeing with the rulings of the Court" and that John "refused to acknowledge the fact that—because the will did not revoke the trust, it would also not revoke non-probate asset designations, which I felt like we needed in order to resolve the case." Avera continued to litigate the issue of whether the will revoked the non-probate beneficiary designations because the trial court "did not want to put on

---

[10] The supreme court denied review of that case on September 23, 2016.

evidence of the full trial of all issues, including removal," until some of the legal determinations had been made, which he stated delayed trial of the removal issue.

Avera testified that it was not his delay, but John's pursuit of unsuccessful and "frivolous" claims, that caused his fees to accrue in his representation of Diane. However, although Avera believed that Diane incurred all her expenses because she needed to defend against John's many claims and motions, and that the prosecution of such unsuccessful claims was further evidence of John's gross misconduct and mismanagement, at no time during the near decade of litigation did Avera oppose any of John's filings as frivolous or seek any sanctions therefor. Although Avera previously testified that some of the issues were "novel" and required an appeal—e.g., the issue of whether the will revoked the trust—on cross-examination he clarified that it was only "novel" in the sense that no litigant had ever appealed the issue because it was such a "straightforward" and "basic tenet of wills" law.

Having reviewed the record, we cannot conclude that all the fees outlined in the exhibits attached to Avera's affidavit were incurred in removing John as executor or were inextricably intertwined with removing him. *See* Tex. Est. Code § 351.003; *Chapa*, 212 S.W.3d at 313–14. Although we agree with Diane that some of those billings encompass tasks that are not directly related to obtaining John's removal but are nonetheless inextricably intertwined with tasks that were performed in furtherance of removing him, we cannot say that is the case for all the billings, and the billings reflect some fees incurred solely for claims other than removing John.[11] However, it is not our province to make such determinations in the first instance. *See*

---

[11] As representative examples, some of tasks listed in the billings' descriptions included reviewing, drafting, and responding to discovery; researching and drafting summary-judgment motions and responses; researching and responding to motions to compel and attending hearings therefor; and reviewing and responding to motions to intervene filed by other beneficiaries.

25

*Brazoria Cnty. Imaging Center, LLC v. Celeste Inv. Grp. Angleton, LLC,* No. 14-21-00485-CV, 2023 WL 4570482, at *5 (Tex. App.—Houston [14th Dist.] July 18, 2023, no pet.) (mem. op.) (reversing and remanding issue of attorney's fees for party's failure to segregate, despite counsel's conclusory testimony that unrecoverable claims were "so intertwined with all the others," for party's failure to meet burden to show that segregation was not required); *Clearview Props.*, 287 S.W.3d at 144–45 (reversing and remanding issue of attorney's fees award after concluding that party did not meet burden of showing that fees were segregable by either party or claim to allow party to properly prove attorney's fees); *see also Metal Bldg. Components, LP v. Raley*, No. 03-05-00823-CV, 2007 WL 74316, at *18 (Tex. App.—Austin Jan. 10, 2007, no pet.) (mem. op.) (reversing and remanding attorney's fees issue, in part, where record did not reveal how trial court performed its segregation analysis). Accordingly, we sustain this portion of John's tenth issue.

We also agree with John with respect to his third argument contending that the trial court's award of conditional appellate attorney's fees is unsupported by legally sufficient evidence. To recover conditional appellate attorney's fees, a claimant needs to provide opinion testimony about the services it reasonably believes will be necessary to defend the appeal and a reasonable hourly rate for those services. *Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 355 (Tex. 2020). Avera's affidavit and testimony do not provide detail about any such tasks for an appeal before this Court or for any proceedings before the supreme court; instead, Diane's attorney testified as to two lump sums (one for an appeal to this Court and one for an appeal to the supreme court) based on his experience and in his opinion. *Cf. id.*; *Jimmie Luecke Children*

---

Each of these billings entries might reasonably relate solely to removing John, solely to other issues, or might be inextricably intertwined with removing John and with other issues.

*P'ship, Ltd. v. Droemer*, No. 03-20-00096-CV, 2022 WL 243162, at *8 (Tex. App.—Austin Jan. 27, 2022, pet. denied) (mem. op.). The awards of conditional appellate fees are therefore not supported by legally sufficient evidence and must be reversed and remanded for redetermination, and we sustain this portion of John's tenth issue. *See Droemer*, 2022 WL 243162, at *8 (reversing award of contingent appellate attorney's fees for legally insufficient evidence due to similar deficiency as here and remanding issue for redetermination).

## CONCLUSION

We reverse the portion of the trial court's judgment awarding trial and appellate attorney's fees to Diane and remand the cause to the trial court for redetermination of attorney's fees. We affirm the trial court's judgment in all other respects.

_____

Thomas J. Baker, Justice

Before Justices Baker, Kelly, and Smith

Affirmed in Part; Reversed and Remanded in Part

Filed:  May 23, 2024